The next matter on our calendar is Alexander Acosta v. Angelica Textile Services. Good morning. You can raise up the whole, little dial on the right there. Top, yeah, there you go. Thank you. May it please the court? Brian Broecker for the Secretary of Labor. You're in the enviable position of having no one arguing at the other side. That is correct. It was just me today. I had a whole career dreaming of a moment. It's all right. But more seriously, as though it were possible not to be more serious, how do we get the other side? I mean, how does this work? Usually if you make an argument and file a brief and nobody else shows up, it's a default is what you have. You win by default here? Or are we supposed to kind of figure out the other arguments for ourselves, the arguments the other way? Well, the question at issue here is whether the Occupational Safety and Health Review Commission arbitrarily and capriciously decided on the repeated characterization question and abuses discretion. So the court is here to review that determination on the repeated characterization and must decide whether or not our arguments are correct. Can we do that outside of an adversary system? The one case that I have from this court where this happened previously was a case called Russell L. LaFroy Builders from 2002. And in that case, the employer sent in a letter at the onset of the proceeding saying, you know, we're not going to participate, it's going to cost us too much money. And the court considered the secretary's petition and made a decision on the merits. Because the employer's interest remains in this case, whether or not it chooses to participate and defend its interest. I'm worried because there's no other side to say what you're wrong because. And usually we have that, and that's why we have two sides. Understandably, certainly. And the commission itself, as you know, is not a ‑‑ it's like a district court. It doesn't have a stake to participate and support its own position. Right. The district court doesn't come up here and have some usually. Yes. Do you know if Angelica's bankruptcy is still going on? My understanding is, yes, it is. Is there any money in the bankruptcy? The distribution process is ongoing. Is that the winding down that's going on? That's the winding down that's going on. So it's effectively defunct and they're just getting money out to creditors. Yes, it's been sold as an ongoing concern as part of the Chapter 11 process, and the disbursements are still ongoing. So if you prevail on this appeal, you would file in that appeal in the bankruptcy case if you haven't already? I'm not sure if the secretary intends to participate in that bankruptcy proceeding or if it intends to attempt to collect the ultimate judgment outside of the bankruptcy proceeding. But those collectability issues would be beyond the scope of today's procession and the jurisdiction of this court. You know the famous legal principle about blood from a stone, right? What is that? You can't get it. You can't get it, right. Well, that may be true. Why is this not moot? This is not moot because we explained this in our letter brief from September. Explain it again. The secretary's interest is that a penalty be assessed whenever an employer, as Angelica has, commits a repeated, a serious and repeated violation because it's required to under the OSHA Act. And the very purpose of the OSHA Act's penalty scheme, the purpose of OSHA Act penalties, is to punish not just the employer that committed the violations, but also to create this deterrent effect, which is what makes the OSHA Act effective. OSHA can't go out and penalize every employer that commits violations, so it needs to send a message with every penalty that if they do commit a serious violation, they are going to receive a penalty regardless of any actions they may take after committing that violation. OSHA Act penalties are designed to address the harm that occurred when the serious violation occurred, and there's nothing an employer can do, be it bankruptcy, cessation of business, to escape its liability for that penalty. It is escaping its liability by virtue of the process it's already put itself through and the fact that it doesn't exist anymore or shortly will not exist. It may be practically. It seems like this is an advisory opinion that the secretary, and I mean this respectfully, and I certainly understand the point you made, but it seems like this is an advisory opinion. You're asking us to spend our time issuing when it is of no effect, and we don't like to do that. I think there is a lot of effect here. A, the effect is that Angelica does exist in bankruptcy and is being wound down, so there is someone with an interest. Whether or not they've chosen to participate is their own decision. Well, did the secretary put in a claim? The secretary has not, as of this date to my knowledge, filed a proof of claim in the bankruptcy proceeding. So isn't that horse out of the barn? Well, it means that the secretary cannot participate as a creditor in the distribution process. It doesn't mean that the interest in that claim has been expunged or removed. The interest persists, and it is able to attempt to collect it however it may be able to do so under the law. And if I may point out the second and perhaps the more important. So not having made a claim and claims having been discharged via the process it chose not to participate in. Yeah, I. The secretary might even be held in contempt, right? No, not at all, Your Honor. If you go try to collect a claim that you didn't participate in a bankruptcy process when the claim existed? You know, I can't speak to that. I'm not sure. I don't think so, but I know that the case law that we cited in the brief, one was this Grenberg decision from the Tenth Circuit, and it considered a case where a proof of claim was not filed timely before the bar date in the bankruptcy proceeding, and it stated that, well, that doesn't discharge the claim. It just means that the claim will not be processed through the distribution process in the bankruptcy court and that the holder of that claim can still attempt to collect on it outside of the bankruptcy process. Because the bar date is to bar claims that are not raised within the bankruptcy system. Right. And I will point out here that the OSH Act penalties are not dischargeable in bankruptcy. It's not like an ordinary claim where it just disappears if you don't seek to assert it. Under 11 U.S.C. 523A7, this is not something that can be discharged through bankruptcy. It's viewed as an intentional tort. Right. Essentially. And because of this government function, because of how the OSH Act works, it remains irrespective of what the employer does after the violation occurred. If you look at the Jacksonville Shipyards case from the Eleventh Circuit from 1997, they discuss why, full stop, an OSH Act penalty cannot be mooted by an employer's post-violation conduct because it would completely undercut the penalty system that Congress put in place when it created the OSH Act. If it was able to do that, employers could decide, well, you know, if OSHA shows up and gives us a million-dollar fine for egregious violations, we'll just fold this business and start a new one. You know, we don't need to comply with the OSH Act up front because we know if the government shows up and puts a big fine on us, we can just disappear. And that would undercut the very purpose of these penalties. I should be assuming we can do it asking counsel, pro bono or otherwise, to take the other side so we have two sides before us. My understanding anecdotally from colleagues is that that has happened in some cases in the past, and in others it has not. It's actually, I have several colleagues who have done cases that they've argued alone because the employer chooses not to participate. It's something that happens with some regularity. But, Seer, I'm willing to accept anecdotally for now, but you are not aware anecdotally of most of your colleagues of courts walking away and saying it's moot. No, I have no precedent for that. And I will say, as we note at the end of our letter brief, that if you were to decide this case was mooted, which we disagree with, the proper remedy would be to vacate the decision below in its entirety because it would then be an unreviewed commission decision. That's the ordinary rule where the appellee has caused the case to be moot is to vacate the lower judgment so it doesn't stand as binding precedent. This is the main concern of the Secretary here is that the commission has thrown out a legal test. I understand that, but if that were to happen, the next case comes along and you wouldn't be bound by anything. You can make the same arguments you made here. Right, but ALJs in the commission ALJs as of this moment are required to follow the reasoning that the commission put out in its repeated characterization analysis. It would be, as a practical matter, it would be in effect. It would be in effect. It would be binding on those ALJs. And it would impact the Secretary's ability to apply repeat characterizations in the future. And that's very troubling for us because, as discussed in our brief, the repeated characterization test has been around for almost 40 years and has never before considered the factors that the commission relied upon in its repeated characterization test. In fact, the commission's own precedent precludes reliance on the factors that the majority looked at here. It's taken, it's said it's applying the potlatch test to the facts in front of it, but in fact relying on factors that potlatch said specifically aren't relevant. It threw out a test under, although claiming to apply it, and completely reworked it such that there really is no understanding about when a repeated characterization should apply. So you argue in order to get the relief you seek, we have to vacate and reverse the opinion below. Is that what you're saying? The relief that we're seeking is that you should reverse the repeated characterization determination. It was incorrect. It was decided based on irrelevant factors. It was a deviation from precedent. We think that, you know, ordinarily is the case when an agency steps away from its precedent is to, for the court to make its order and then simply remand it for reconsideration in compliance with that order. In this case, the facts itself that relate to the hazards and conditions involved in Angelica's violations are undisputed. There is no dispute about what the hazards were and which workplace conditions gave rise to those hazards. So this court can use its fertility exception to say these violations are repeated as a matter of law and then remanded the commission to recalculate the penalty based on that proper characterization. This is what the Third Circuit did in the Trinity case recently and another case that was cited at the end of our brief. Getting rid of this decision so it doesn't stand as a precedent, but it's enough if we vacate and reverse. Right. The part of the majority's decision that we have a problem with is just the repeated characterization determination. Where it affirmed our violations, we, of course, agree on the substance and the merits of them. It's this repeated characterization that we have a problem with. It's that issue that you want not on the books of the commission. Exactly, because it's determination of that issue completely throughout the existing test. So that's what we're asking the court to do. If the court doesn't feel that it can make that determination, it can still say that they acted arbitrarily and capriciously in abuse of discretion and remand for the commission to then reassess whether the hazards and conditions involved in Angelica's 2004 and 2008 violations were substantially similar. We think it's obvious that they are. There's no reasonable question that they are. But the court can decide which is the most appropriate remedy. Thank you. I take it you haven't reserved any time for rebuttal. I will not be reserving any time today, no. Thank you. Great. Thank you very much.